WILLIAM BOGLE *vs.* ARCHIBALD BOGLE & others.
ARCHIBALD BOGLE & others *vs.* WILLIAM BOGLE.

One who undertakes to act as trustee of a particular fund for another, from whom he received it, without compensation, with no beneficial interest in the fund, and with no agreement to act for any specified length of time, is entitled to be discharged whenever the further execution of the trust becomes inconvenient to him.

A trustee who has mingled the trust fund with his own property, and in rendering his account has failed to charge himself with the full sum due from him, is not entitled to have the costs of a bill in equity instituted by him to obtain a discharge from the further execution of the trust allowed out of the fund; but will be charged with the payment of the expenses of taking the account.

An unnecessary cross bill, in a case where the plaintiff in the original bill was also in fault, dismissed without cost to either party.

THE first of these causes was a bill in equity against a *cestui que trust* and co-trustees, in which the plaintiff, William Bogle,

prayed to be discharged as one of the trustees under an indenture with Archibald Bogle, one of the defendants. The second was a cross bill, seeking for discovery as to the account of William, and other appropriate relief, and opposing his discharge. The material parts of the indenture are copied in the margin.*

---

* "This indenture of two parts made this twenty-eighth day of May in the year of our Lord one thousand eight hundred and forty seven, by and between Archibald Bogle of Glasgow, in the kingdom of Scotland, but recently resident at Boston, in the State of Massachusetts and United States of America, of the first part, and William Bogle of said Boston, Daniel Bogle of Dover, in the State of New Hampshire, and James Bogle of the city, county and State of New York, of the second part, children of said Archibald, witnesseth :

That whereas the said Archibald contemplates returning to said Glasgow, and is the owner of certain personal property, hereafter described, and is desirous of having the same sold, and the proceeds thereof properly invested and applied to his support during life :

Now therefore, in consideration of the foregoing and of the covenants made by the party of the second part, hereafter contained, the said Archibald does hereby transfer and convey to the said William, Daniel and James the following described goods and chattels, namely : . . . . . . . In trust, nevertheless, for the purposes and objects following, namely :

That the said William, Daniel and James shall sell and dispose of the said property, according to their best judgment and discretion, paying all proper and necessary charges upon the same, and shall invest the proceeds thereof, except as hereinafter provided, in such manner as to them shall seem judicious, and shall keep the same so invested, during the said Archibald's life.

And the said William, Daniel and James, in consideration of the foregoing and of said transfer of said property to them, hereby accept said conveyance, and agree to dispose of said goods and chattels according to their best judgment, and to invest said proceeds in some judicious manner, and to hold the same for the trust purposes thereof; it being, however, expressly understood that the said trustees may reimburse themselves for all advances actually made, from the principal sum resulting from the net sales thereafter made, and be charged with the income of the remainder of said proceeds.

And the said William, Daniel and James further agree to remit to said Archibald, at said Glasgow, funds or money, at the rate of three dollars for each week, during said Archibald's life, for his support, from the proceeds of said sales and the income thereof.

And it is further understood and agreed, that such sums of money as the said William and David and James shall have expended or become liable for, in

The trust fund from the first has been wholly in the hands of William, who, upon difficulties growing out of this circumstance, filed his original bill on the 1st of December 1855. The facts are stated in the opinion.

*H. M. Parker*, for William Bogle.

*N. T. Dow*, for Archibald Bogle & others.

CHAPMAN, J. The indenture between Archibald Bogle and his sons gave them no beneficial interest in the property conveyed. It was made on account of his desire to return to Scotland; and his sons undertook, without compensation, to convert this property into cash, invest it properly as trustees, and pay over the income to him in the manner stipulated. They might reimburse themselves for their expenses, and for certain sums to be paid towards the support of a brother at the insane asylum; but were entitled to retain nothing more even at the decease of their father. He might by his will dispose of any balance that should remain in their hands.

The answer of Archibald Bogle does not set up any claim to have the trust continued during his life. It states that he has not desired, and does not desire that the said William may be discharged; but desires that he may be compelled to submit the management of the fund to the care, judgment and management of Daniel and James; and consents that the whole matter shall be disposed of by the court.

The trust created by the agreement is of a peculiar and unusual character. The fund is in substance a voluntary deposit, gratuitously received of the *cestui que trust* for his benefit. In the absence of authorities on the point, the court think it equitable that one who assumes a trust of this character, without compensation, may resign it whenever the further care of the property becomes inconvenient to him, and restore the fund to the owner, and is entitled to a decree discharging him from the trust.

---

supporting and maintaining another brother, named Robert, now under treatment at the McLean Asylum for the Insane, near said Boston, shall be deducted from said amount remaining at the decease of said Archibald."

In this case, as Archibald Bogle is desirous to have the property remain in the hands of the other trustees to be managed by them, the plaintiff may be discharged on delivering the funds and securities to them. A decree to that effect is to be framed under the direction of the court.

But the plaintiff is not entitled to costs. He had a right to ask the direction of the court, and to charge the expenses of the suit upon the fund, provided he had been in no fault. But he has mingled the trust fund with his own property, and in rendering his account, he admitted only a portion of what was due from him. For this reason he should not be allowed costs, and should be charged the master's fees which were incurred in the investigation of the account.

All the objects sought in the cross bill might have been attained by proper answers and proceedings in the original bill. It was therefore unnecessary, and should be dismissed without costs to either party.